404 So.2d 1210 (1981)
STATE of Louisiana
v.
Charles P. COOK.
No. 81-KA-0345.
Supreme Court of Louisiana.
September 28, 1981.
*1211 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Richard Petre, Asst. Dist. Attys., for plaintiff-appellee.
Elizabeth Cole, Supervising Atty., New Orleans, John A. Murphy, Student Practitioner, Tulane Appellate Advocacy Clinic, for defendant-appellant.
BLANCHE, Justice.[*]
Defendant, Charles P. Cook, was arrested in his home on August 27, 1980 pursuant to an arrest warrant issued on August 13, 1980. He was charged in the warrant with "theft and possession, La.R.S. 14:67, 14:69." Following the United States Supreme Court's holding in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) that warrantless arrests in the home are unreasonable per se, the validity of this arrest warrant assumed critical importance. The warrant of arrest and its supporting affidavit, which are the objects of defendant's attack, read as follows:
"WARRANT OF ARREST
TO: THE SUPERINTENDENT OF THE NEW ORLEANS POLICE DEPARTMENT, HIS AUTHORIZED REPRESENTATIVE(S), AND ALL OTHER PEACE OFFICERS IN THE STATE OF LOUISIANA
AFFIDAVIT(S) HAVING BEEN MADE BEFORE ME, UNDER OATH, BY P/O Michael Melton, EMPLOYED BY THE NEW ORLEANS POLICE DEPARTMENT, ON THE 13th DAY OF AUGUST, 1980, THAT ON THE 13th DAY OF AUGUST, 1980, THE OFFENDER, Charles P. Cook B of I # 116-267, DID COMMIT THE CRIME OF Theft and Possession of property $200.00, AS DEFINED IN LOUISIANA REVISED STATUTE Art. 67, 69, WHICH CRIME WAS COMMITTED IN THE PARISH OF ORLEANS, STATE OF LOUISIANA.
YOU ARE, THEREFORE, COMMANDED TO ARREST SAID OFFENDER AND TAKE HIM/HER FORTHWITH TO BE BOOKED AND CHARGED IN ACCORDANCE WITH LAW."
* * * * * *
"BEFORE ME, the undersigned Judge of Magistrate Court, Parish of Orleans, State of Louisiana, personally came and appeared: P/O Michael Melton, employed by the New Orleans Police Department, 715 South Broad Street, New Orleans, Louisiana WHO, after first being duly sworn by me, deposed and stated that a warrant of arrest should issue ordering the arrest of: Charles P. Cook who, on the 13th day of August, 1980, in the Parish of Orleans, State of Louisiana, did commit the crime of Theft and Possession, as defined in the Louisiana Revised Statute Article 14-67, 69, 108. The facts and circumstances given to support the issuance of this warrant are: Victim has special Black Mustang (Hood stolen). Victim found hood (described dents and cracked front and broken bolt). Checked with owner of car with stolen hood on it. He admitted to stealing it along with # 2 subject. (Gave name and address and second subject also admitted. Both gave name of # 3 subject.). Officers went to third subject's house told mother subject identified as one in theft and subject jumped out of window and fled. All three subjects have records and are known characters to the 7th district police.
 /s/ MICHAEL S. MELTON 
 AFFIANT"
After his arrest, Cook was advised of his rights and interrogated as to a variety of offenses. He was continually in the custody of the arresting officer from 11:30 a. m. to 4:00 p. m., at which time he was taken to the Central Lockup. During this 4½ hour period, petitioner made a statement which led to his booking on unrelated counts of *1212 burglary. Defendant was charged in separate bills of information with two counts of residence burglary and two counts of simple burglary.
On the date his trial was to commence, the state nolle prosequied the second count in both informations and reduced the first charge to simple burglary. Cook then pleaded guilty to Count # 1 in both matters, but reserved his right to appeal the denial of his motion to suppress his confession and palmprint obtained while in police custody. It is contended by Cook that this evidence was obtained after an unlawful arrest based on an invalid warrant. Consequently, his confession and palmprint, which were the basis of his present convictions, were tainted and inadmissible as evidence against him.
Defendant's sole assignment of error relates to the failure of the affidavit to establish probable cause. If the affidavit is inadequate, the arrest warrant based upon the affidavit would be defective and Cook's subsequent arrest unlawful. Defendant contends that any evidence obtained pursuant to the arrest would be inadmissible against him. Cook relies on Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) to support his argument. In these cases, the U.S. Supreme Court held that evidence obtained from an unlawful arrest is the "fruit" of official illegality and should be excluded as evidence under the Fourth Amendment. Hence, the admissibility of Cook's admissions and the palmprint obtained while he was in police custody hinge solely upon the adequacy of the affidavit upon which the arrest warrant was issued.
Article 202 of the Louisiana Code of Criminal Procedure provides:
"A warrant of arrest may be issued by any magistrate, and except where a summons is issued under Article 209, shall be issued when:
"(1) The person making the complaint executes an affidavit specifying, to his best knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any; and
"(2) The magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it.
"(3) A justice of the peace shall not have the authority to issue a warrant for the arrest of a peace officer for acts performed while in the course and scope of his official duties.
"When complaint is made before a magistrate of the commission of an offense in another parish, the magistrate shall also immediately notify the district attorney of the parish in which the offense is alleged to have been committed."
The arrest warrant affidavit need only specify the nature, date and place of the offense along with the name of the offender. Although the affidavit meets all of these requirements it is the position of the defendant that the affidavit in question fails to meet the federal due process requirements with respect to probable cause. In Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), the U.S. Supreme Court stated:
"The purpose of the complaint, then, is to enable the appropriate magistrate, here a commissioner, to determine whether probable cause required to support the warrant exists. The commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusions that the person whose arrest is sought has committed a crime."
Defendant argues that probable cause to support the warrant must be shown within the "four corners" of the affidavit. However, this Court ruled in State v. Hynie, 395 So.2d 669 (La.1981) that the issuance of an arrest warrant, unlike a search warrant, is valid if the magistrate has within his knowledge sufficient facts to establish probable cause for the arrest. We held that *1213 an arrest warrant does not depend solely upon the information recorded within the "four corners" of the affidavit. Consequently, when this Court is confronted with an arrest warrant based upon a confusing or constitutionally inadequate affidavit, the matter will be remanded for additional information regarding the facts within the magistrate's possession. Because we find the affidavit in question to be constitutionally sound, a remand is not necessary.
In interpreting the text of the affidavit, this Court is guided by our ruling in State v. Babbitt, 363 So.2d 690 (La.1978). We held that "affidavits must be given a common sense and realistic interpretation; and a doubtful or marginal case will be resolved in favor of upholding the validity of the warrant."
The affidavit is clear that the police had located two persons suspected of participating in the theft of the hood from the victim's auto. These suspects admitted their participation in the theft and named "Subject # 3" as a co-participant. Further, the affidavit states that "Subject # 3" fled after the police arrived at his residence. Though the affidavit does not name Charles Cook in the supporting facts, a careful reading of the entire document reveals that the third subject is the defendant herein.[1]
Defendant correctly contends that the affiant did not possess first hand knowledge of the crime and had relied upon an informant. Thus, the statements by Subjects # 1 and # 2 in the affidavit are hearsay. Because this hearsay information was an essential element in establishing probable cause, the magistrate was bound by the "two-pronged" test as set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and adopted by this Court in State v. Paciera, 290 So.2d 681 (La.1974). These requirements are: (1) that the magistrate must be informed of some underlying circumstances upon which the informant's conclusions were based; and (2) the underlying circumstances from which the affiant concluded that the informant was credible or his information was reliable. Thus, the affidavit must demonstrate that the informant is credible and that his information is reliable.
The affidavit recites that Subjects # 1 and # 2 admitted their participation in the offense. Because of this "direct personal observation" (Paciera, supra), the second requirement is met.
Defendant's claim that the affidavit does not sufficiently establish the credibility of the informants presents a more interesting question. Defendant argues that statements against Penal interest alone are not enough to support the credibility of these unidentified informants.
In United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), a case which involved inculpatory statements by a confidential informant, the U.S. Supreme Court stated:
"Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility sufficient at least to support a finding of probable cause to search." (403 U.S. at 583, 91 S.Ct. at 2082)
The rationale of Harris was adopted by this Court in State v. Mena, 399 So.2d 149 (La.1981). We held that an affidavit need not contain an averment of previous reliability. It was concluded that, in determining probable cause, the proper inquiry was whether the present information supplied by the informant is truthful or reliable. Further, we found an admission of criminal activity to carry its own indicia of reliability sufficient to support a finding of probable cause.
*1214 Cook argues that Mena is factually distinguishable. There, unlike the present case, the identity of the informant was noted in the affidavit. Consequently, it is urged by the defendant that additional verification is required. The admission of participation in the theft is not, by itself, enough to find these unidentified informants to be credible. State v. Welsh, 371 So.2d 1314 (La. 1978). Thus, before the informants' inculpatory statements can flower into probable cause, independent factual corroboration must exist.
We find the affidavit to contain substantial facts to support the credibility of the informants. Hence, we need not address the sufficiency of a declaration against penal interest, standing alone, to establish the credibility of hearsay information. An examination of the affidavit supports our conclusion.
First, there is the observation by the victim of the stolen hood in the possession of one of the informants. The affidavit recited that he was the owner of the stolen hood and was able to recognize it because of "dents and cracked front and broken bolt." The sighting of his property in the possession of one of the suspects/informants clearly gave weight to the credibility of the inculpatory statement which followed.
Second, the hearsay statements by each suspect supported the admission of the other. Upon being confronted, the owner of the car upon which the stolen hood had been installed not only admitted his participation, but also implicated "Subject # 2" and Cook. When the second subject was approached, he confirmed the accuracy of the earlier statement made to the victim. Both of these subjects then named Cook as a participant in the theft. These inculpatory statements, made on separate occasions and by separate individuals, are most significant in establishing the credibility of these informants.
Further, the affidavit states that the police, upon learning of defendant's participation, went to his house. His mother came to the door and was informed that her son was identified as a participant in the theft. At this point, Cook jumped out of a window and fled. This action on the part of Cook was not, by itself, adequate to establish his participation in the crime. But, as we stated in State v. Herbert, 351 So.2d 434 (La. 1977):
"Furtive actions and flight at the approach of law officers may indeed be proper factors in the decision to make an arrestif `coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime.' Peters v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904 [20 L.Ed.2d 917] (1968)."
We believe that defendant's flight, under the circumstances, inferentially corroborated the inculpatory statements of the other two suspects.
We conclude that the observation by the victim, the separate admissions by each suspect along with defendant's flight from the officers give ample support to the credibility of the hearsay statements. Though the affidavit in question was poorly drafted, this Court has previously held that a "policeman's affidavit should not be judged as an entry in an essay contest ... but rather must be judged by the facts it contains." State v. Welsh, supra. Affidavits are usually drafted by law enforcement officers in the haste of a criminal investigation. To mandate technical requirements of elaborate specificity would tend to discourage police officers from submitting their findings to a magistrate before acting. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).
The information within the affidavit supported the statements against penal interest. It was sufficient to warrant a person of reasonable caution to believe the person to be arrested has committed a crime and was, therefore, constitutionally sound. As a consequence, the arrest of Cook pursuant to the warrant was lawful. The evidence obtained as a result of his arrest was not tainted and was admissible against him.
Accordingly, the conviction and sentence of defendant are affirmed.
AFFIRMED.
NOTES
[*] Judges Grover L. Covington, Luther F. Cole and J. Louis Watkins, Jr. of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] One of the charges listed in the affidavit is "Resisting an Officer", R.S. 14:108. Subject # 3 fled when the police went to his house to question him about the theft. Thus, this charge supports the identification of Charles P. Cook as Subject # 3.