FORET, Judge.
Defendant, Albert Brian Spallino, was charged with four crimes: distribution of cocaine, carrying a concealed weapon, resisting arrest, and possession of cocaine. Spallino filed two motions to suppress, contending that the evidence was obtained by legally insufficient search and arrest warrants. The motions were heard and denied by the trial court. We granted writs as to the trial court’s denial of Spallino’s motions to suppress.
FACTS
In September of 1986, Detective Keith Latióla and other officers of the Acadia Parish Sheriff’s Office began an investigation into illegal drug activity at Ray Lee’s Supper Club near Crowley, Louisiana. Officer Will Abshire, an undercover agent of the Calcasieu Parish Sheriff’s Office, also took part in the investigation. On December 18, 1986, Abshire approached Lee Myers about purchasing cocaine. Shortly thereafter, Abshire overheard a telephone conversation between Myers and a party Myers referred to as “Brian.” This conversation was also monitored by Latióla. While on the phone, Myers asked “Brian” if he still had a “half carat,” to which the party on the other end apparently replied, “yes.” Myers then inquired about the item’s price and “color.” Myers wrote the figure $1300 on a tablet. Abshire then gave Myers thirteen $100 bills in “buy money.”
At that time, Myers and Steven Fonte-not, an employee of Myers, left Ray Lee’s Supper Club. According to surveillance by the Calcasieu Parish Sheriff’s Office, the two drove to American Jewelers. Apparently, Myers left the vehicle, walked into American Jewelers, returned to his car, purchased gasoline at a service station next to American Jewelers, and drove back to Ray Lee’s Supper Club. Upon his return, Myers gave Officer Abshire approximately one-quarter ounce of cocaine and a $650 refund.
Approximately five months later, on May 15, 1987, a warrant was issued for Spalli-no’s arrest on the charge of distribution of cocaine. A search warrant was also issued for American Jewelers and Spallino’s residence. Spallino operated a jewelry repair business out of the American Jewelers building. Subsequent to his arrest, Spalli-no was charged with carrying a concealed weapon, possession of cocaine, and resisting arrest. Arrest warrants in connection with these additional charges were issued several days after his arrest.
ASSIGNMENTS OF ERROR
I. SEARCH WARRANT
By this assignment of error, Spalli-no contends that the search warrant issued *955 for American Jewelers was invalid because: (1) it failed to sufficiently describe the place to be searched; (2) it was stale; and (3) it was not based upon probable cause. Therefore, defendant contends that any evidence seized pursuant to the search warrant is inadmissible at trial.
The State argued, at the suppression hearing, that it never contended that it intended to introduce at trial any evidence seized pursuant to a search warrant. The record includes an application for a search warrant and a search warrant for Spalli-no’s residence, indicating that nothing was seized pursuant to this warrant. The record contains no search warrant for American Jewelers.
The trial court, in its oral reasons for ruling, stated:
“As to the issue concerning the search warrant, I think it’s moot because the State has made a declaration that they did not receive any fruits from the search and do not intend to introduce any at trial.”
We agree with the trial court. Any issue as to the propriety of the search warrant is moot.[1]
II. ARREST WARRANT
Spallino argues that the arrest warrant issued on May 15, 1987, five months after the December 18th, 1986 incident, was defective and invalid. Specifically, he maintains that the affiants failed to disclose any facts upon which the existence of probable cause could be found.
The search and arrest warrants were issued at the same time, by the same judge. The “four corners” rule of search warrants is not applicable to warrants for arrest. State v. Cook, 404 So.2d 1210 (La.1981). Therefore, any information divulged by the officers, whether oral or in the search warrant affidavit, should be considered, even if not present in the affidavit to the arrest warrant.
The affidavit was sworn to by Officers Latióla, Folds, and Fryar, in front of Judge Ronald Cox. Latióla and Judge Cox both testified that no information was presented to the judge other than that which was contained in the affidavit. However, Latio-la’s testimony revealed that there was conversation between the judge and Latióla which clarified certain parts of the affidavit. ' According to the affidavit,
“... narcotic detectives who were surveying the undercover agent, observed subjects Lee Myers and Steve Fontenot depart Ray Lee’s Supper Club and drive to American Jewelers, located on Highway North 13, in Crowley, La. Prior to leaving Ray Lee’s Supper Club, subject Lee Myers telephoned subject Brian Spal-lino at American Jewelers and spoke with Spallino concerning the quantity of cocaine to be purchased. It was during this conversation that subject Lee Myers made arrangements' to travel to American Jewelers to obtain the cocaine. Narcotic detectives surveilled subject Lee Myers and Steve Fontenot to American Jewelers who was driving a 1984 Lincoln Continental, bearing La. license 484X335 and registered to Ray Lee Myers, Post Office Box 103, Midland, Louisiana. Subjects Lee Myers and Steve Fontenot entered American Jewelers and stayed inside for approximately fifteen (15) minutes. Subjects then exited and entered the Lincoln Continental and returned to Ray Lee’s Supper Club on Highway 90 East.”
The testimony of Latióla, regarding the conversation between himself and the issuing judge, which clarified the assertions in the affidavit, should be considered. This testimony highlighted that the actual facts which were communicated to the judge were that the officers believed the telephone conversation between Myers and “Brian” was “coded.” Cocaine was never mentioned; rather, the conversation used the terms, “carat” and Myers inquired as to the “carat’s color.” The name “Brian” was the only indication of the speaker on the *956 phone; a last name was never used. The officers apparently concluded that “Brian” was Brian Spallino because Myers called “Brian” and went to American Jewelers in the middle of a drug transaction, although no officer actually saw Spallino, or observed or heard Myers talking to Spallino, or testified that Spallino was even there.
The affidavit goes on to state that Latiola informed the sheriffs office that defendant was “involved in cocaine and methamphetamine activities.” When questioned at the hearing, Latióla testified that he received this information from “intelligence.” However, he could not remember from whom he had received this information.
The record herein provides no evidence to show the veracity or reliability of this “intelligence” informant. Further, no testimony was given as to the basis or source of this information. It thus seems that Latiola’s general information that Spallino was involved in illegal drug activity is of no moment, given the fact that the record is void of any evidence of the “intelligence’s” trustworthiness.
Therefore, the only information to be considered is that:
(1) Myers went to American Jewelers after making a phone call to “Brian” about whether or not he still had “a half carat” to sell;
(2) the phone call took place during a drug transaction;
(3) Myers took $1300, the amount agreed to over the phone, of Officer Abshire's drug money before leaving for American Jewelers;
(4) upon his return, Myers gave Abshire one-quarter ounce of cocaine and a $650 refund.
During the nine-month investigation, this was the only observation connecting Myers to American Jewelers and no witnesses ever saw Spallino talk to Myers or engage in any type of exchange with Myers.
We do not find that the judge issuing the arrest warrant had a substantial basis to conclude that sufficient probable cause existed to arrest Spallino. A single incident, based upon the officers’ presumptions, i.e., that “Brian” was Brian Spallino and that a phone conversation regarding jewelry involved illegal drugs, is insufficient to support a belief that a crime had been committed by Spallino. Therefore, we find the arrest warrant defective and invalid and the evidence seized pursuant to this warrant inadmissible. We find that the trial court erred in denying the motion to suppress.
III. WARRANTLESS ARREST
By this assignment of error, Spalli-no contends that no probable cause existed to arrest him on the charges of possession of cocaine, carrying a concealed weapon, or resisting arrest. The State contends that the arresting officers witnessed the commission of these crimes while executing the arrest warrant. Insofar as the arrest warrants as to these three charges were issued four days after the arrest and accompanying seizures, it is clear that the seizure was not made pursuant to these warrants.
The State has failed to put on any evidence regarding facts and circumstances which would prove that a crime was committed in the presence of the officers. Neither the arresting officers nor Spallino appeared as witnesses. The State merely made the conclusory statement that Spalli-no committed a crime while they were executing an arrest warrant. Further, no evidence was admitted to show that the physical evidence seized was within Spallino’s immediate reach at the time of his arrest, therefore justifying a warrantless search due to the exigency of removing any weapons or preserving any evidence.
The burden of proving the admissibility of evidence seized without a warrant is placed upon the State. La.C.Cr.P. art. 703(D). We do not find that the State has carried this burden of proof.
IV. ORIGINAL DOCUMENTS
By this assignment of error, Spallino contends that the court improperly admitted unauthenticated copies of the application for the search warrant, the search warrant, and the arrest warrant. Because of our *957 foregoing disposition, we need not reach a decision on this assignment of error.
Y. CONCLUSION
Based upon the foregoing, we reverse the trial court’s denial of Spallino’s motion to suppress and find the evidence seized pursuant to his arrest inadmissible. We remand for further proceedings consistent with this opinion.
WRIT GRANTED AND MADE PEREMPTORY.
DOMENGEAUX, C.J., dissents and assigns reasons.

. The State admits that the search warrant, issued five months after the transaction, was stale.